IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG CLIFFORD BUSCH,<br><br>  Petitioner,<br><br>  v.<br><br>JEANNE S. WOODFORD, et al.<br><br>  Respondents. | No. C 04-4157 MJJ<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Before the Court is Petitioner Craig Clifford Busch's ("Petitioner") petition for writ of habeas corpus ("Petition"). In May 2001, the Lake County Superior Court held a three-day evidentiary hearing, at the conclusion of which the court summarily denied the habeas petition. Having reviewed the moving and responding papers including the supplemental materials submitted by the parties, and for the following reasons set forth herein, the petitioner's writ of habeas corpus is **DENIED**.

## FACTUAL BACKGROUND

On the morning of February 2, 1997, Petitioner was angry with George Steven Wilson ("victim") because the victim moved out of Petitioner's ranch.[1] Petitioner told a number of people that he had decided to kill the victim. On the night of February 2, 1997, the night of the victim's

---

[1] The facts are derived from the California Court of Appeals decision, attached to the Answer as Exhibit F ("Ex. F"), and from the Answer itself.

1  death, the victim was last seen in the company of Petitioner and his companions.  According to the
2  companions, the victim's truck got stuck in mud and the victim was forced to stay behind with the
3  truck.

4  The victim was found dead near his truck, with three bullet wounds in the back of his head.
5  The location of the homicide was a place Petitioner had previously declared a good spot to carry out
6  a murder.  Petitioner was taken into custody.  While incarcerated, he told a jailhouse informant
7  where he hid the murder weapon, and a ballistics test later confirmed that the weapon was used in
8  the killing.

9  On May 12, 1997, the District Attorney of Lake County filed an information against
10 Petitioner, charging one count of first degree murder, in violation of Cal. Penal Code § 187(a).
11 Petitioner was further charged with: (1) personally using a firearm in the commission of the above
12 offense, within the meaning of Cal. Penal Code § 1203.06; (2) intentionally inflicting great bodily
13 injury on the victim, within the meaning of Cal. Penal Code § 1203.075(a)(1); and (3) being armed
14 in the commission of the charged offense within the meaning of Cal. Penal Code § 12022.5(a).

15 Petitioner entered a negotiated plea of guilty to a charge of first degree murder.  Pursuant to
16 the plea agreement, the enhancements were dismissed, and Petitioner's unrelated drug charges and
17 the pending perjury charges against his girlfriend were not filed.  Petitioner was subsequently
18 sentenced to an indeterminate prison term of 25 years-to-life.

19 **STANDARD OF REVIEW**

20 The Court may entertain a petition for a writ of habeas corpus "on behalf of a person in
21 custody pursuant to the judgment of a State court only on the ground that he is in custody in
22 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v.*
23 *Hodges*, 423 U.S. 19, 21 (1975).

24 A petition for writ of habeas corpus is reviewed under the Antiterrorism and Effective Death
25 Penalty Act of 1996 (AEDPA).  *Williams v. Taylor*, 529 U.S. 362, 399 (2000).  The AEDPA
26 prohibits a federal district court from granting a petition challenging a state conviction on the basis
27 of a claim that was reviewed on the merits in state court unless the ruling "was contrary to, or
28 involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Also, a district court must presume a state court's factual findings are correct.  28 U.S.C. § 2254(e).

A district court may not grant the writ of habeas corpus simply because the state court erroneously or incorrectly applied clearly established federal law. *Williams*, 529 U.S. at 411. Rather, the state court's "application must also be objectively unreasonable." *Id*.  Furthermore, a state court judgment arrived at erroneously should only be overturned if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001).

Where the state court provides no rationale for its conclusion, the state court decision does "not warrant the deference we might usually apply," and the Court may independently review the claims of the petition.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (citing *Delgado v. Lewis*, 168 F.3d 1148, 1152-53 (9th Cir. 1999)).  The Court's review is not *de novo*, "but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable."  *Delgado*, 223 F.3d at 982 (citation omitted).

## DISCUSSION

## I.  Voluntariness of Guilty Plea

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  A guilty plea is unintelligent "if a defendant does not understand the charges against him or the possible punishment he faces." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986).  Furthermore, the plea is deemed coercive and involuntary where a defendant is "induced by promises or threats which deprive [the plea] of the nature of a voluntary act." *Id*. (citation omitted).

### A.  Existing Mental Illness Did Not Invalidate Guilty Plea

Petitioner argues that his youthfulness, habitual drug use, and traumatic head injuries made it extremely hard for him to make a critical life decision in a "reasoned, intelligent manner" regarding

3

1  entry of his guilty plea. Respondent argues that Petitioner's mental faculties were unimpaired when
2  making his plea agreement.

3        The record reflects that two psychiatrists evaluated Petitioner and found him sufficiently
4  competent to stand trial. Dr. Rosoff filed his psychiatric evaluation of Petitioner on March 26, 1997,
5  and found "no evidence of such clinical entities as mental retardation, schizophrenia, mania, major
6  depression, organic brain damage or general anxiety." (Reporter Transcripts of State Habeas
7  Proceedings, attached to the Answer as Exhibit G ("RT - Ex. G") at 46; Dr. Rosoff's Psychiatric
8  Evaluation of Craig Busch, attached to the Answer as Exhibit J ("Ex. J") at 4.) On that same day,
9  Dr. Drury filed his psychiatric evaluation, which concluded that Petitioner was "essentially free of
10 major signs of mental disorder, mental disease or psychiatric disease." (RT - Ex. G at 47; Dr.
11 Rosoff's Psychiatric Evaluation of Craig Busch, attached to the Answer as Exhibit K ("Ex. K") at 6.)
12 He concurred with Dr. Rosoff that there was "no evidence of clinical entities such as mental
13 retardation, organic brain damage, schizophrenia, mania, major depression or impulsive control
14 disorder." (RT - Ex. G at 48; Ex. K at 6.) Furthermore, Dr. Thompson, a forensic psychiatrist
15 retained by Petitioner for habeas corpus proceedings, agreed with the findings of the first two
16 psychiatrists "that [Petitioner] did not show evidence of major mental illness," and did not contend
17 that Petitioner was incapable of making a voluntary and intelligent plea. (RT - Ex. G at 31, 49.)

18       In *Godinez v. Moran*, the defendant was assessed by two psychiatrists who concluded that he
19 was competent to stand trial. 509 U.S. 389, 391 (1993). The trial court found that the defendant
20 understood the charges against him, was able to "assist in his defense," and the plea was "freely and
21 voluntarily" given. *Id*. at 396. The Court rejected "the notion that competence to plead guilty or to
22 waive the right to counsel must be measured by a standard that is higher than (or even different
23 from) the *Dusky* standard."[2] *Id*. at 398. The Court noted that a trial court must satisfy itself that the
24 plea was knowingly and voluntarily made, but there is no higher standard of competence required.
25 *Id*. at 400. Therefore, the competency standard required to plead guilty is no higher than that
26 required to stand trial. *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (citing *Godinez*, 509

---

[2] In *Dusky v. United States*, the Court held that a defendant is competent if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." 362 U.S. 402 (1960).

4

1  U.S. at 402 (1993)).

2  Given the factual similarity between *Godinez* and the present case, the Court finds Petitioner
3  was competent to plead guilty. As in *Godinez*, the trial court reasonably relied on the psychiatric
4  evaluations in determining Petitioner was competent to stand trial. Thus, as in *Godinez*, it was
5  reasonable for the trial court, in the habeas proceedings, to find that Petitioner's competency to stand
6  trial rendered him sufficiently competent to plead guilty.

7  Furthermore, Petitioner's allegations of habitual drug use are insufficient to invalidate his
8  plea. In *Ybarra v. United States*, the court noted with approval an out-of-circuit case[3] that concluded
9  narcotics use by a defendant five days before his guilty plea did not render the plea involuntary. 461
10 F.2d 1195, 1199 (9th Cir. 1972). The *Ybarra* court used this reasoning to conclude that the
11 defendant, although suffering from withdrawal during arraignment, understood the nature of the
12 proceedings and "understood what he was doing when he pleaded guilty." *Id*.

13 Here, Petitioner did not argue that he was under the influence on the day he entered his plea
14 or several days before; Petitioner only claims that his history of drug use rendered him incompetent.
15 Therefore, like *Ybarra* and *Edwards*, it was reasonable for the trial court, in the habeas proceeding,
16 to find that Petitioner's habitual drug use did not render his plea involuntary.

17 Petitioner's claim that an existing mental illness rendered his plea involuntary was not
18 unreasonably denied by the trial court in the habeas proceeding and the Court **DENIES** the writ of
19 habeas corpus on this ground.

20 **B.     Petitioner Did Not Have Sufficient Time to Consider Plea**

21 Petitioner argues that the voluntariness of his plea was undermined by an unreasonably short
22 time frame for making a decision of such magnitude. Specifically, Petitioner asserts that he only had
23 two hours to deliberate over the 25 years-to-life plea agreement, which rendered his plea involuntary

---

[3] In *Edwards v. United States*, the court held the guilty plea voluntary despite the accused's claim that he was incompetent at the time of arraignment because he was then suffering from withdrawal symptoms. 256 F.2d 707, 710 (D.C. Cir. 1958). The court noted there was a five day period between the arrest and the arraignment.

5

and unintelligent.[4] Petitioner also argues that his subsequent affirmative responses in court are insufficient to find that he understood the consequences of his plea or that he had an opportunity to properly weigh his options. In support of his argument, Petitioner contends that the court, "rather than asking [Petitioner] exactly what he meant by that ambiguous response," forced him to present an answer that did not express Petitioner's current mental state. (Traverse ("Tra.") at 3.) Specifically, Petitioner asserts that "[he] did not state unambiguously that he had enough time to discuss his case with counsel. His initial response to the court's question whether he had enough time - a tepid 'I guess' - showed [Petitioner's] uncertainty whether he should enter that plea." (*Id*. at 2.)

Respondent states that Petitioner's argument is undermined by *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In *Blackledge*, the court held that findings made by the judge accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." 431 U.S. at 74. The Court noted that while a plea or sentencing proceeding record "is not invariably insurmountable," it is an "imposing" barrier. *Id*.

In Petitioner's briefing to the Court, Petitioner failed to cite, and the Court is unable to find, any case authority supporting the novel argument that two hours is insufficient time to deliberate over a plea. Under *Blackledge*, Petitioner's declarations in open court[5] carried a strong presumption of verity, and the trial court's finding that Petitioner fully waived his constitutional rights, understood the nature and consequences of his plea of guilty, and gave a free and voluntary plea is reasonable. Petitioner's argument that his statements were ambiguous and, therefore, not conclusive fails to surmount the imposing barrier created when he entered a guilty plea under oath.[6]

---

[4] While Petitioner claims he only had two hours, Respondent argues that Petitioner had a year to consider the general plea and at least several days to consider the plea agreement that was eventually agreed upon.

[5] The transcript of Petitioner's guilty plea shows that he was given 16 pages of advisements and warnings, all of which Petitioner articulated he understood.

[6] Petitioner also asserts that he did not understand the possible punishment he would face because counsel inaccurately explained Petitioner's likelihood of being paroled. The Court finds Petitioner's argument without merit. "Parole eligibility is a collateral matter rather than a direct consequence of a guilty plea, of which a defendant need not be informed." *Hill*, 474 U.S. at 55 (1985). Here, Petitioner was informed that he may be eligible for parole sooner if the enhancement and burglary charges were

6

1    However, even without considering *Blackledge*, Petitioner's arguments are inherently flawed. It is well accepted that a criminal defendant has "no constitutional right to [a] plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Therefore, the prosecutor's time restraint was a legitimate exercise of his power to "withdraw his consent to the bargain" before the plea was accepted by the defendant or the court. *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992). In addition, it is noteworthy that Petitioner's confession occurred prior to any plea negotiations, and under the assumption that there would be no "benefit to his case in return for the statement." (Pet. at 27.) Thus, Petitioner did not detrimentally rely on a prosecutorial promise to plea bargain because he did not provide the incriminating statement or any other information to the government based on a promise to negotiate. *Id*. Therefore, the trial court's finding that Petitioner's plea was not coerced was reasonable.

In sum, Petitioner has failed to establish the two-hour time frame he was given to accept the plea offer was constitutionally deficient, and in any event, Petitioner has no constitutional guarantee to a plea agreement. Accordingly, the Court **DENIES** the habeas petition on this ground.

## II.     Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is cognizable under the Sixth Amendment, which guarantees not only assistance of counsel, but *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 686, 688 (1984). Due process requires a judgment be overturned based on ineffective assistance of counsel when "(1) trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) the defendant was prejudiced by the deficient performance." *Siripongs v. Calderon*, 133 F.3d 732, 734 (9th Cir. 1998) (citing *Strickland*, 466 U.S. at 691 (1984)). Petitioner argues that his trial counsel was deficient for following four reasons: (1) trial counsel's failure to investigate the possibility of an existing mental defense; (2) an economic conflict that created a conflict of interest; (3) allowing Petitioner to give an incriminating statement; and (4) general claim of ineffective assistance of counsel.

### A.     Failure to Investigate the Possibility of an Existing Mental Illness

---

dismissed, and not that he would necessarily be paroled before completion of his 25 years-to-life sentence.

7

1    Petitioner asserts that his trial counsel was deficient for failing to investigate his potential
2    mental defenses.[7]  Respondent argues that Petitioner's trial counsel considered and rejected
3    "potential mental defenses in light of the overwhelming evidence that [P]etitioner suffered from no
4    disorder."  (Ans. at 11.)

5    Petitioner's argument is without merit.  Initially, Petitioner relies upon *Caro v. Woodford*,
6    where the court held that a reasonably competent attorney is expected to investigate, including
7    applying for a court appointed expert, where evidence suggests a client might have a mental
8    problem.  280 F.3d 1247 (9th. Cir. 2002).  In *Caro*, trial counsel failed to seek out an expert to
9    assess the extent of the defendant's brain damage.  Petitioner also relies upon *Douglas v. Woodford*,
10   where the court held that the duty to investigate "arises whenever some evidence points to a
11   potential mental defense, even though counsel or the defendant may favor a conflicting defense,
12   such as an alibi."  316 F.3d 1079, 1085-86 (9th Cir. 2003)).

13   Neither *Caro* nor *Douglas* lend support to Petitioner.  Here, no sufficient evidence existed
14   suggesting that Petitioner suffered from any mental illness.  To the contrary, all relevant evidence -
15   two psychiatric evaluations and the personal interaction between Petitioner and counsel - led to the
16   conclusion that no mental defenses were applicable to Petitioner's case.  Moreover, an attorney has
17   an obligation to make reasonable investigations, but when an attorney decides not to further
18   investigate based on reasonable tactical evaluations, his performance will not be constitutionally
19   deficient.  *Siripongs*, 133 F.3d at 734.  Petitioner's trial counsel relied on Petitioner's claims of
20   innocence and an alibi to establish their strategy, and made a reasonable tactical decision not to
21   further investigate Petitioner's mental state because they believed "it would have been inconsistent"
22   with their theory of the case.  (Pet. at 11; RT - Ex. G at 293.)  Given these considerations, the Court
23   cannot find Petitioner's trial counsel's performance fell below an objective standard of
24   reasonableness.

### B.   An Economic Conflict of Interest

26   Petitioner alleges that his trial counsel was deficient for allowing an economic conflict to
27   develop and for notifying the prosecution of counsel's intention to withdraw.  Specifically,

---

[7]Petitioner has a history of head injuries and habitual drug use.

8

1  Petitioner asserts that the fee agreement with his attorney created a economic conflict by pressuring
2  him "into pleading in order to spare his mother the added cost of trial." (Pet. at 25; RT - at Ex. G
3  166-67.) Respondent argues that a conflict of interest neither existed nor adversely affected trial
4  counsel's performance.

5  The fee agreement required Petitioner's mother to sell her property, with Petitioner's counsel
6  taking a promissory note, secured by a deed of trust against the property. Furthermore, the fee
7  agreement stated that Petitioner's mother would incur pretrial fees of $40,000 and an additional
8  $40,000 if the case went to trial, with the understanding that no payments would be required before
9  trial.

10  The Court finds Petitioner's argument without merit. Petitioner fails to cite any case law
11  where a violation of the Sixth Amendment resulted from an attorney properly asserting his interest
12  in payment for his services. Moreover, ineffective assistance of counsel based on a conflict of
13  interest must establish "an *actual* conflict of interest that adversely affected his lawyer's
14  performance," rather than the mere possibility of a conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 348-
15  50 (1980) (emphasis added).[8] "There is an actual, relevant conflict of interest if, during the course
16  of the representation, the defendant's interests do diverge with respect to a material factual or legal
17  issue or to a course of action." *Id*. at 356. Here, Petitioner's claim fails because his evidence only
18  "concluded that this fee agreement created a *potential* and [not an *actual*] conflict of interest
19  between Tulanian and his client." (Pet. at 24; RT - Ex. G 165.)

20  Petitioner also asserts that his trial counsel's attempt to withdraw exposed the weakness of
21  his case. In support of his argument, Petitioner asserts that his trial counsel wrote a motion
22  documenting his belief that Petitioner's mother would not pay his fees, and proceeded to serve a
23  copy on the prosecutor. As a result of counsel's actions, Petitioner's mother took steps to fulfill the
24  fee agreement and counsel never filed the motion in court.

25  Once again, Petitioner's argument is without merit. Petitioner, once again, fails to cite any
26  case law where a violation of the Sixth Amendment resulted from an attorney's attempt to withdraw

---

[8]The Eleventh Circuit has noted that "[a] speculative or hypothetical conflict . . . does not violate the Constitution;" the petitioner must show that counsel "'accurately represented conflicting interests.'" *United States v. Khoury*, 901 F.2d 948, 968 (11th Cir. 1990) (quoting *Cuyler*, 446 U.S. at 350 (1980)).

9

1  from a case.  Even assuming, *arguendo*, that counsel was objectively unreasonable for providing the
2  prosecutor with notice of his intent to withdraw, Petitioner has not established a reasonable
3  probability that such information would have led to a different verdict (had the case gone to trial).
4  *See Strickland*, 466 U.S. at 694.

5       Therefore, because Petitioner cannot show that the trial court unreasonably denied relief on
6  his ineffective assistance claim based on conflict of interest or his counsel's attempt to withdraw, the
7  Court **DENIES** the writ of habeas on this ground.

       **C.**     **Allowing Petitioner to Give an Incriminating Statement**

9       Petitioner alleges that trial counsel was deficient for permitting Petitioner to give a "self-
10 incriminating statement without some promise of benefit."  (Pet. at 30.)  Respondent argues that
11 Petitioner's trial counsel permitted Petitioner to make a statement based on a reasonable strategic
12 decision.  Respondent further alleges that Petitioner's trial counsel took "prudent measures to limit
13 any possible detriment resulting from Petitioner's statement."  (Ans. at 15.)

14      In a statement to the police, Petitioner admitted that he was present during the murder, but
15 denied that he killed the victim or had any knowledge that the victim would be killed.  Petitioner
16 further admitted moving the body after the fact and hiding the murder weapon and gloves.

17      Petitioner's contention that "the statement weakened his position at trial by locking him into
18 a particular version of events, by creating possible grounds for a felony-murder theory, by subjecting
19 his girlfriend to a perjury charge, and by providing a motive for the killing" is without merit.  (Ans.
20 at 14.)  In support of his argument, Petitioner relies upon *Harris By and Through Ramseyer v. Wood*,
21 where the court found counsel deficient for allowing the defendant to give an incriminating
22 statement without any promise of benefit.  64 F.3d 1432 (9th Cir. 1995).  In *Harris*, the court found
23 that advising the defendant to make a statement was part of the cumulative prejudicial performance
24 of counsel.  *Id*. at 1438.  The defendant admitted shooting the victim, but no facts demonstrated that
25 the prosecution could establish a case without the incriminating statement.  *Id*. at 1435.

26      In the case at bar, in contrast to *Harris*, Respondent's witnesses could establish Petitioner's

1  participation in the murder prior to the statement.[9]  Furthermore, the record demonstrates that his
2  trial counsel had a sound strategic reason for permitting Petitioner to make the statement.
3  Petitioner's trial counsel testified that "[t]he bottom line is that without that statement that there
4  would not have been any need for further negotiations, that there would have been no basis for
5  dismissing any special allegation; and there had to be some reason to consider that, and that was the
6  reason that this statement was offered."  Moreover, the parties agreed that the statement could not be
7  used in the prosecutor's case-in-chief, but could only be used in rebuttal if the defendant offered
8  testimony inconsistent with his statement.[10]  Therefore, unlike in *Harris*, the record demonstrates
9  that the prosecution could establish its case without Petitioner's incriminating statement and trial
10  counsel had a sound strategic reason for permitting the statement.  Accordingly, the Court **DENIES**
11  habeas relief on this ground.

   **D.    General Ineffective Assistance of Counsel**

13  Petitioner alleges that counsel was deficient in not encouraging him to go to trial where he
14  would have received a better outcome.  Petitioner relies, in large part, on the statement given by
15  Steve Wilson, Jr., who claimed that a percipient witness, Dylan Bacon, had just identified Donovan
16  as the person who shot the victim.  Petitioner asserts that this evidence could have been used at trial
17  to reduce his culpability in the murder.

18  Despite Petitioner's assertion to the contrary, the Court finds that Petitioner would likely not
19  have gone to trial in light of the overwhelming amount of evidence that pointed towards guilt,
20  including the government's witnesses and the murder weapon itself.  Given this evidence, it is
21  unlikely that a reasonable jury would have found Petitioner less culpable or returned a verdict less
22  stringent than first degree murder.  For these reasons, the trial court reasonably found that

---

[9] The prosecution witnesses could establish: 1) the victim was last seen in the company of Petitioner and his companions before the killing; 2) the location of the homicide was a place Petitioner had previously declared a good spot to carry out a murder; 3) Petitioner's admissions that he wanted to kill the victim and; 4) the place where Petitioner hid the murder weapon. (Ex. F. at 1-2)  The prosecution also had a witness that could incriminate Petitioner in the robbery. (RT - Ex. G. at 466.) The only fact the prosecution could not conclusively establish before the incriminating statement was that Petitioner moved the body.

[10] In *Harris*, the incriminating statement had no protection and it was "freely admissible in court for any purpose."  64 F.3d at 1437.

11

1 | Petitioner's trial counsel was not ineffective, and the Court **DENIES** habeas relief on this ground.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated: August_10_, 2005

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE